Could we call the case, please? Would the parties presenting argument please approach? Introduce yourselves. You can spell your last name, please. Good morning, Your Honors. My name is Christopher Evers of the Office of the State Appellate Defender, representing Mr. Scott Kieta in today's argument. Good morning. Good morning, Your Honor. Zachary Slavens, Assistant States Attorney on behalf of the people of the state of Illinois. Last name S-L-A. He is Victor, E-N-S. Okay, good morning to both of you. We typically allow 15 minutes per side. We're going to be flexible on that, but let's try to keep that close. I assume that Mr. Evers, you'd like to reserve a few minutes for rebuttal? Yes, please. Okay. All right, I think we're ready to begin. Please remember that the microphones are not for amplification, but for recording. So we get all your arguments recorded. Please speak into the microphone. And with that, Mr. Evers, you have the floor. Thank you. Thank you, Your Honor. My last name is spelled because you asked, and I forgot to include E-V-E-R-S for the record there. Good morning, Your Honors, and may it please the Court. I am here today, of course, representing Mr. Scott Kieta. As always, I would welcome direction from the Court if there's any particular issue or nuance of the appeal that you'd like me to focus on first. Otherwise, my plan is to quickly address how the Circuit Court erred by admitting the propensity evidence of the testimony of C.C. and then turn to the numerous instances of improper statements by the prosecutors in closing a rebuttal argument. In relation to the propensity evidence, ever since the Illinois Supreme Court's decision in Donahoe, courts have recognized that the most, I guess, important or critical information when doing the required balancing test between probative and prejudicial is the nature of the actions the defendant can control. And this Court decision in Johnson, which I think provides excellent guidance in determining today's issue, found that when a court did not recognize clear dissimilarities in the information presented to it and did not undertake the meaningful balancing of the probative versus the prejudicial effects of that evidence, focusing only on the probative, that's an abuse of discretion. And that's what we present today, believe, for what happened here today. In this case, the trial judge, in making its factual findings of similarity, just misstated the most critical information about the similarities between E.R.'s and C.C.'s experiences, saying that both were fully ordered to disclose. That is not what the prosecution ordered. I'm sorry. Both are what? Ordered to declose. Take their clothes off. Sorry. I got a little more formalized than necessary there. And so that's not what the prosecutor proffered to the judge. And so the judge stating that is just simply incorrect. Also, the judge's description of the actions at hand, both were committed of forceful sex acts, while accurate, goes far beyond the particularity that Donahoe, this Court in Johnson, and the Third District Justice in Smith that we address in our briefs talk about, where they focus there on the precise action, getting down to whether penetration was evaginal or anal or oral among those three cases. And that was clearly different in this case. And so why we argue that the Court abused its discretion, because its three-word analysis of the balancing, it is evident, could not really have been done correctly if it misunderstood that there were clear dissimilarities that it did acknowledge. At that point, wouldn't really have been able to place how probative or prejudicial the evidence is, and thereby admitting it would have been an abuse of discretion. And unlike in Johnson, which also provides guidance on the harmlessness of admitting that evidence, there was no DNA evidence connecting here. In Johnson, the Court also found there was an immediate outcry that played a role in how harmless it was or not, and that the State minimally used a propensity evidence. That is not the case here. The State referred to Cici's testimony in closing and in rebuttal, and used that clearly to establish that she, quote, corroborated E.R.'s testimony. Because Cici testified a certain way, you must believe E.R. That does not make it a harmless error, and we believe it leads to a new trial for Mr. Chieda. Roberts. Is your complaint that the Court didn't conduct the balancing test or that it did do it correctly? She did not do a meaningful balancing test. She certainly listed out the legal standard, and she said in balancing, she said, quote, it is evidence. But … But if her ruling was right, we could still affirm it, right? Absolutely, of course. This is an abuse of discretion standard. You can certainly take a look at that. But I guess our argument is that she couldn't have done a meaningful analysis if she didn't consider the actual facts presented to her. And that's not a meaningful analysis. Now, of course, the three of you are going to look for the record and make your decision, and you find that it is otherwise admissible and met the requirements and was an abuse of discretion, it's going to come in, of course. But … Oh, I'm sorry. I didn't mean to put you off. You've got a question. The facts don't have to be identical. There could be some differences, minor differences. Here we have a situation where you have two preteen young ladies, and both were assaulted in a trailer by the accused, allegedly. There is. There are some similarities, but the test goes to not so much being identical, but where the probative value of the similarities matters. In the third decision's – third district's decision in Smith, they found dissimilar that played a role in not admitting evidence that the charged offense of the gentleman there was that he touched a girl in her vaginal area over her clothes. They found dissimilar that another alleged offense earlier that he touched a girl in her vaginal area under the clothes. Didn't the Smith court hold that the 25-year difference is reasonable enough not to admit it? That was not entirely. Yes, that played a role. Certainly, the less – farther away in time, that decreases probative value. But in this particular statement, the 25-year difference alone is enough to make a difference in that case. I don't – my knowledge is that's not a direct fault, that it was purely – they focused a lot on the dissimilarities, recognizing, again, it's the actions of the defendant that gets into this. But I guess our overall argument is if the trial judge didn't even acknowledge that there are clear dissimilarities that has been recognized by Donahue, Johns, and Smith, that we piece that out, setting where that probative value is couldn't be used to do a meaningful analysis. So I want to just hang there for a moment on the characterization of less than a meaningful analysis. Is it your position that just because the trial judge did not state with greater specificity that the analysis performed was not meaningful? I mean, a trial judge, for some reasons, obviously doesn't do a full discourse necessarily of every factor he or she is considering. How do you get to less than meaningful simply because the statement with respect to the propensity evidence was less than what you thought should have been included? Actually, there's two things that feed into what our argument here is. First and foremost, it can't be meaningful if she's just wrong on the facts. She misstated facts that were given to her. So that cuts against it being meaningful because she couldn't have weighed back and forth if she's got something that she has to weigh incorrect. Also, yes, it is evident it's not much of an explanation. And I don't have a bright line that I can draw from you on what is enough is enough, but some explanation, recognizing that there are dissimilarities and saying that, certainly I think it's, you know, and she does say the thing that does reach the conclusion that it is more probative than prejudicial, but is evident doesn't give a lot of explanation for that as well. But primarily, having the facts wrong can't allow for a meaningful analysis, which is what Johnson asserted to a certain extent. By just not recognizing the clear dissimilarities, how could there be meaningful analysis? But your point is that the unclothing issue is really the key. In one case, the defendant allegedly pulled down the clothes, and the other one, he told him that he was going to need to pull down the clothes. Is that a significant difference? Well, it's the complete removal. I mean, in both cases, it was the defendant's will, which is, you know, the defendant's will, which is what the cases hold is true. He wanted both unclothed, and that's what happened. And that goes into the similarity versus dissimilarity thing. Absolutely. This is not that something is different, it's never admissible. This is, at the end of the day, always a balancing test. But the similarities between the actions is something that Donahue focused on. Smith talked about Johnson, and in that case, there was the same physical penetration of oral and vaginal assaults against both victims. The Court found it important that the similarity difference, the dissimilarity, of also anal penetration. These precise actions matter. And so if the judge did not recognize there were two discrete different actions, setting where the probative value is to measure it against the clear prejudicial effects of my client couldn't have been done meaningfully. You're right, Your Honor. Of course there were similarities. I'm not saying that this is completely dissimilar. We're saying that the judge didn't fulfill her obligation to balance them properly, and that's an abuse of discretion. And it certainly wasn't harmless evidence to admit it. But if the judge doesn't say enough on the record, but we find that the record supports the decision, that a reasonable judge could have reached this conclusion, don't we affirm any of this? That is your point, absolutely. That's part of the abuse of discretion. So here we have children of roughly the same age, prepubescent children, in the same trailer, under the same circumstances of the ruse, I guess, maybe it's not a ruse, of babysitting, right? Yeah. Okay. I mean, that's a fair amount of similarities, then. Those are the similarities you just discussed, yes, are similarities to access, which Donahue itself discussed as not nearly as important as similarities of the nature of the offense. Yes, those similarities are there. The babysitting, I think, is slightly enlarged. I guess that's what Egar's father testified, and that's why she was there. Her — his niece wanting to visit him more is slightly different. But, yes, totally staying the night, that is similar. But that access similarity is not as important from the Court's perspective in multiple decisions as the nature of the offense, which is different. It's clearly dissimilar and was not recognized by the Court. But, of course, Your Honor, that's your view. If you find that openly, that's something that you can affirm on. If there's no additional questions on that first issue of propensity, I'm going to move to the improper statements from the bondholders. We have a lot that we listed in our opening brief here, and certainly the most egregious ones in Argument 2A are the ones that are preserved. But as an overarching comment, what we're making the argument today is that the cumulative effect of all of these statements throughout closing and rebuttal should not give this Court confidence that Mr. Keita received a fair trial, because there were so many instances of shifting the burden of proof, trying to inflame the passions of the jury, that would distract the jury from looking at the evidence that they needed to decide. And it's that distraction taking away from their primary purpose which we can't feel confident that Mr. Keita received a fair trial. But discussing about the first ones that were fully preserved in Objection 2, in rebuttal argument, very near the end of the rebuttal argument from the prosecutor, she twice told the jury over a sustained objection the defense could have brought Theresa in and had her testify. And shortly thereafter, twice told the jury over another sustained objection that she didn't testify because she was scared of Mr. Keita. We've cited numerous — that's just improper. Shifting the burden of proof to the defendant during a trial is not proper. That's been well established. And then, of course, this making something up over a basis of assertion that she is scared to argue that to the jury, especially in rebuttal, when there's no attempt to rebut or otherwise explain from the defense perspective, it's also not allowed. Now, an ongoing theme throughout the entire State's response to our briefing was that the comments made by the defense counsel was invited in some form. And that takes two — two forms. In the 2A argument, these objected-to and sustained objections, they cited authorities saying that — And they went again. And they went again, yes. And that's — and that goes to the idea that just doing it over and over again, it was objected to, sustained. Jury told, please disregard. That doesn't cure the error. And our authority of Larry talks about just the repetition alone draws attention to it, thinks the defense maybe is hiding a secret fact from them in some regard. And in this decision in Abadieh, a single instance when the prosecutor indicated that the defendant somehow scared witnesses away was objected to, it was sustained, and the Court still found that wasn't enough to cure the error because it was making up this assertion that the defense threatened witnesses. You can't unlock that and get the jury to unhear it. And that prejudices the defendant in Abadieh, and it certainly prejudices her here. But the invited comment statement that they've argued here in the first argument, 2A, was because defense counsel talked about his theory of the case. E.R. could not be believed. He went through inconsistencies in things that she said versus other evidence there, and, yes, mentioned Teresa and asked the rhetorical question to a certain extent, is that something that's believable based on all the authority and all the facts that E.R. testified to? That is very different from the authority the State cited for their proposition that was invited. Those cases dealt with, with the defense attorney, in the closing argument, basically told, expressed to the jury, the State could have brought in, and Kleiner could have brought in a witness to say this, could have brought in bank records and implied, because they didn't bring it in, they must be hiding something from you. And that's the assertion what the Court focused on. Same with the Baugh case with phone records. Defense counsel did nothing like that, never asserted that Teresa would have come or anything, but just asked, is it believable, given the relatively close confines of this trailer and supposedly how many times these assaults took place in E.R. and Teresa's presence, sometimes around, sometimes not, is that believable in the context of everything else that was inconsistent? That's not what we have here. The other types of arguments they make for invited comments goes to the idea, because defense attorney made a closing argument, they can rebut it, which is absolutely true. But the invited comment doctrine, if you will, is defense attorney says something expressly, and the prosecution is allowed to say something expressly back that they otherwise wouldn't because they have to be allowed to respond. And our arguments in 2B, C, and D were not invited like that. Argument 2B, calling defense counsel that he blamed E.R. He was disgusting for raising the defense theory that E.R. cannot be believed, and recognizing that her failure to outcry is something the court or the jury should consider. Can that be made as calling the theory disgusting rather than counsel disgusting? Well, again, which pronoun we put in front of it, I think I don't want to get bogged down in that too much, but the idea of calling it disgusting, its sole purpose was to inflame the passions of the jury, thinking that E.R. couldn't be attacked. And why it's particularly damaging is at the beginning of the closing argument, the prosecutor told the jury with the power of the State behind her, it's not uncommon that child witnesses don't make outcries or anything like that. This comment about calling the defense counsel, blaming him, calling him disgusting, is a direct reference to the fact that the State prosecutor gave the people. It's not uncommon not to outcry. He's disgusting for trying to even bring it up during his argument there. By itself, calling reversal, likely not. But this is just a drop in the bucket to all the other comments there, and clearly showing the ability to try to get the jury to make a decision based on emotion and sympathy for the victim versus focusing on the evidence, which then moves into the 2C arguments, which is the, you know, the attempt to get sympathy from the jury to make the decision based on that. They started off with talking about how her innocence was stolen, her childhood destroyed, and, you know, that evokes sympathy, but it's not going to any of the facts in the case. Do you really think that those statements, as opposed to the age of the young women allegedly abused is what evokes the sympathy? Well, I mean, because typically when you hear that someone who's 8, 9, 11 years old has been sexually assaulted, I mean, the sympathy level already goes up. Do you really think that there were any statements that would have enhanced that? Well, in that statement, by itself, Your Honor, I wouldn't be here. But that's just beginning what we argued in Argument 2C there. There's also the 11 instances of calling him a predator throughout the closing rebuttal arguments, linking not only him, those comments to E.R.'s testimony, but linking E.R. and C.C. together, which kind of goes to the harmful effect of her propensity testimony as showing that he's a predator, which the Second District and Empole Mazzotta is only there to inflame the passions of the jury, wanting the jury to not think this is a good man, he deserves punishment, we will convict him, versus going through the evidence that's important there. Furthermore, we discussed kind of the medical testimony that was discussed by the prosecutor, Dr. Fuhara, in very large detail about the examination that E.R. went on, but it was, and I'm sorry that I'm ringing the ear, actually. I'm speaking a little quickly, and I apologize for that. I just kind of get rattling sometimes. Began and ended her discussion of that testimony with how humiliating it was for E.R. And, again, this is part of the pattern throughout the closing argument and reference again, rebuttal, of trying to invoke the sympathy of the jurors. And, yes, talking about her age is required. It's one of the elements. There's nothing improper about that. But it's going over all these other additional words, which is purely in the choice of the prosecutors. It does not need to be done. It does not touch upon the evidence at issue, how they can weigh her credibility or not, and is not geared to bring the jury to a better understanding of the facts they have to wrestle with versus trying to make a decision. We have a very few couple more arguments in 2D that I'm not going to discuss. Ultimately, arguments B, C, and D were not preserved. But the cumulative effect shows that there is a trickle, a trickle, a trickle that's becoming a flood of these improper comments. And this Court does have the ability, and we urge you, to review them under both first and second form, plain error. Certainly, it's a substantial right to shifting evidence. It's a substantial right trying to base an assertion that has no support in fact. That's a substantial right to bring something in with the power of the State. Very quickly, because it was focused on by the State, the closely balanced aspect is not both parties have to present the same number of witnesses and it goes back and forth. The focus of the Court that looked at is what's the issue, and I guess contention among the parties here is the credibility and believability of ER. Does the error, in which case these improper statements, go to that issue? And that's what was taking place in Maldonado and Pietkowski that the State cited and we replied in our final briefing there, is that those were focused on that precise issue. These improper statements were focused on the precise issue of ER's credibility and how they make the decision that makes it appropriate for closely balanced. If there are no further questions, thank you, Your Honors. We ask that Mr. Kea to receive a new trial. Thank you, Counsel. Good morning, Your Honors. May it please the Court. Again, my name is Zachary Slavins and I represent the people of the State of Illinois. Here, defendant received a fair trial and he was not substantially prejudiced by the prosecutor's comments during closing argument. This Court should affirm defendant's conviction for predatory criminal sexual assault for the following two reasons. First, the circuit court did not abuse its discretion in weighing the probative value against the prejudicial effect of the other crime's evidence here. And second, the people's closing argument was not improper. The Court cured any prejudice from the improper form of some statements. And ultimately, none of these errors constitute reversible error, nevertheless plain error. Turning to my first point to just briefly discuss the other crime's evidence, here the Court properly weighed the probative value of C.C.'s other crime's testimony against its prejudicial effect. As this Court correctly noted, the circuit court heard briefing, it heard argument, and it articulated a ruling finding that the probative value outweighed the prejudicial effect. Yes, Your Honor. There are some dissimilarities between the two offenses. E.R. and C.C. were ultimately penetrated in different ways. But the gist of the acts here are more similar than dissimilar. And counsel points to a number of cases saying that they emphasize the nature of the abuse. But in particularly, the Smith case, not only did the Court there focus primarily on the ages of the other offenses, but it noted that the other crimes that were properly excluded there were significantly different, actual forcible penetration versus simple touching, and were significantly more serious than the charged conduct. And that sort of distinction is not present here. We have very similar conduct in that they were both forcibly penetrated in the trailer, on the bed. They were required to remove articles of clothing, perhaps not all of their clothing, as the Court may have stated. But generally, these are more similar than dissimilar. And the Court – Counsel, it hasn't been our experience that child sexual predators, that they tend not to change what they do. They tend to act similarly as they go on and perpetrate their crimes against other victims. They have the same MO. They have the same things that they like to do. At least – I mean, I know we're not criminologists, but I think that that's what we tend to see in these cases, that these predators will behave the same way as they go on and victimize child after child. Yes, Your Honor. Isn't it fairly different to have one victim be vaginally raped and the other be anally raped? That's pretty different, isn't it? A couple points to that. Yes, some predators tend to be far more preferential with respect to their behavior. And that's a good word. That's better than the way I said it. Some of them do tend to be more preferential with respect to the way in which they commit their offenses. But our case law very clearly establishes that identicality of criminality is not required. And the second point to that is, in fact, the evidence here does indicate that Mr. Chieto was, in fact, somewhat preferential. He did select young girls of strikingly similar ages. And he engaged in very similar conduct in that he gained the trust of their parents, was acting as a babysitter to both of them. So there are similarities here that the court properly considered. And ultimately, this cannot be found to be an abuse of discretion simply because the court did not recite ad nauseum every basis for its findings. This was briefed. This was argued. The court articulated its reasoning in its ruling. And that is not an abuse of discretion. And as to the prejudicial effect, the idea that this turned into a mini trial on C.C.'s testimony is not borne out by the record. This was 18 pages of testimony. There were four discreet references to her in closing argument. And they all specifically went to the propensity. And the comments that testimony was corroborated by C.C. went to the description of the trailer as to its layout. So this was not a mini trial. This was not a trial centered on C.C.'s acts. The gist and the focus of the argument always remained on the charge defense. Turning to Issue 2 with respect to the closing argument, defendant argues he was ultimately denied a fair trial by comments made by the prosecutor during closing argument. However, the circuit court did not abuse its discretion here with respect to its regulation of the style and substance of closing arguments. Turning first to the comments with respect to Teresa Quieta, it's important to note the first fact that Mrs. Quieta's presence in the trailer during the abuse was a focus of defendant's closing argument. He put it to the jury, how could this have occurred if she was there in the trailer, essentially indicating that her presence in some way made the commission of the acts impossible. And the people are allowed to respond to that, and that is what these four preserved comments were intended and designed to do. And ultimately, they're allowed to respond to it by blaming the defense for not calling her as a witness and speculating that maybe the reason she didn't do anything was because she was scared. Two points. Are those proper comments? Two points to that rebuttal, Your Honor. First, with respect to calling to attention the jury the fact that defendant has subpoena power. The court has held that where a defendant puts a witness or something at issue during closing argument, it is proper for the prosecutor to call to the attention to the jury that they had the ability to compel that appearance at trial so long as they front the burden of proof, which is the real error with those comments is that the people did not front the burden of proof, which the trial court articulated in the record in explaining at the motion on this trial the reason for sustaining those objections. As to suggesting that the people were suggesting that the defendant intimidated Ms. Chieta into not testifying, that's not actually borne out by the record. The prosecutor's comments there went with respect to defendant's argument that this could not have occurred in this small trailer if she was there. And the people were arguing for an inference that the reason she didn't go back there and inspect was because she feared him. And that is an argument for an inference from the facts in the record. And ultimately, the court sustained those objections, saying it wasn't supported by the evidence. And... Are you saying that that statement was not error? Attempting to argue for an inference from the record is not erroneous. Respond, Your Honor. What record? What inference was drawn from what record? This woman never testified. The defense says, not that it's impossible that he could have committed sexual assault while his wife was in the trailer, but that it's not very likely. It's harder to believe. I think that they're entitled to argue that, right? They can say that it's not a believable story. The jury thought it was. Fair enough. But that's an argument to make. From that, you think the people are allowed to say, oh, it's because she was scared? No, Your Honor. We can't ever say that, you know, she was specific. She didn't testify because she was scared. But that's also not what was said here. What they said here was she didn't perhaps do something in the trailer at the time, arguing that she was afraid of him. And that was an inference we were arguing from the evidence from E.R. that... I think Theresa was afraid of him. Yes, Your Honor. To the extent, though, that this is improper, the circuit court sustained the objection and instructed the jury to disregard any comments that were not made. I know. So what I'm asking you is, was it error or was it not error? Yes, Your Honor, that was error. Okay. Including the fact that they phrased it in the first person, which is really the significant problem there. But ultimately, any prejudice from those comments was cured by sustaining the objections and properly instructing the jury. And to the extent that defendants suggest that this was a repetition of the same comment, trying to overbore the instruction, what we have here are actually three different lines of argument, that there was subpoena power, that Theresa feared him, and the argument that Scott had some ideas in his head about what he could get away with. So those are three arguments and three separate comments. Each objected to doesn't indicate a sort of repetition that ordinarily overbears jury instructions. What with respect to the cumulative nature of these errors, and you've just admitted that the inference with respect to Kim's fear was improper, what with respect to Mr. Heffer's argument that standing alone, perhaps none would be an offensive discussion or reversible error, but now we have the cumulative nature of these several comments that are being made? Yes, Your Honor. Ultimately, the cumulative effect looks at everything that occurred. And here we don't have the sort of cumulative effect that would lead to reversal. Blue is the landmark case there, obviously, and perfectly illustrates the sort of cumulative effect that would. That was really far off. We're not near blue here, but that doesn't mean that we're not somewhere in the middle and that that couldn't somehow also amount to error, reversible error. Yes, Your Honor, you're right. We are not near blue, and we discussed that in our brief. But a lot of the cumulative error argument hinges on a number of these unpreserved errors and bootstrapping these to the preserved errors. And looking at these unpreserved errors, these don't rise to the level of reversible error, nevertheless plain error. With respect to the comments made towards defense counsel's argument, we have to, again, look at these closing arguments in full context. And during defense counsel's closing argument, defendant, in addition to calling attention to Ms. Chieta's presence in the trailer, a lot of the argument focused on the credibility of the victim, E.R. Defense counsel attacked her credibility on a number of bases, arguing expressly that she was dishonest no less than eight times. The defense counsel argued that E.R. actually made up this story as a ploy for attention, inspired by a television show. He argued that the victim could have simply made up an excuse to not go back over there, that she should have lied to her parents to avoid being victimized. And with respect to those comments, the prosecutor replied to the argument that her lack of contemporary outcry was evidence of her dishonesty. The prosecutor characterized that argument as disgusting and suggested it was blaming her for being victimized. And ultimately, that was directly responsive to the argument advanced by defense counsel during close. And again, there was no objection made to this at trial. This error is not preserved for review. And defendant is correct. They are allowed to question the credibility of witnesses. They're allowed to call attention to the inconsistencies in their testimony. But the way in which that occurred here invited a response from the prosecutor. The prosecutor made brief statements regarding that line of argument, and that does not rise to the level of reversible error. Turning next to the. But to say that it was disgusting, you think that was proper? Under these circumstances, Your Honor, it was characterizing an argument by defense counsel, and that's not reversible error to respond to. I accept that there's a difference between saying an argument is disgusting and a person. I accept that they were talking about the argument, but is that okay? I mean, as you said, the defense gets to question the credibility of a witness, even a child witness. I mean, who has the right to put on a defense? You have the right to respond, but to call it disgusting, to challenge the credibility of your accuser is disgusting? Do you think that's okay? Yes, Your Honor. This has to look at the closing arguments in their totality. Okay. And that goes to the overall, you know, decision we'll make. You know, cumulatively, was it a fair trial denied? But was that common error? Your Honor, under the invited comment doctrine, no, it was not. The people are allowed to, in general, characterize arguments and argue the credibility of witnesses. And here, defense counsel made an argument and chose to make it in a specific manner, and the people were entitled to respond to that. Turning now to the comments that defendant claims incited the passions of the jury, again, none of these were objected to. None of this is preserved for review and must be now assessed under the plain error doctrine. First, the references to the victim's age and vulnerability are proper arguments as to her credibility. Defense counsel, in his brief, makes a point that some of these occurred during the opening of the closing argument. But the credibility of witnesses is always an issue, and the people don't need to wait specifically until this has been challenged to say something about the credibility of a witness here. And the references to her age and vulnerability go directly to her credibility as a witness. The primary avenues of attack on VR were that she couldn't remember some details about the start date. She misremembered some details, maybe about the decoration. They were different than her father, how he described the size of the trailer. All of these go precisely to her age. Her age can explain a lot of this to the jury, and which is why these were brought up at closing argument and argued by the people. These all bear on her credibility, which is always an issue. And the comments in rebuttal, in addition to being proper arguments as to her credibility, were responsive to the attacks on her credibility during defendant's closing argument. Defense counsel also makes issue with the use of the term predator, but the case law is clear that the people may use a term to describe defendant if that is what he stands accused of. And here he was charged with predatory criminal sexual assault. This is simply describing the crime of which he stands accused. And to the extent defense counsel relies on Mapula Masga as indication that this word cannot be used, it is notable that the crime charged there was not predatory criminal sexual assault. Additionally, the conduct at issue here was seeking out the trust of the parents, gaining access to these children, isolating them. The use of the term predator describes this sort of conduct. And defendant did not object to any use of this word. So, again, that has to be viewed under the plain error doctrine. Counsel, I don't think any of you would disagree that when you're trying to defend the credibility of your witness, you're going to talk about whatever you need to talk about, and you don't have to wait for the defense counsel to first impugn her credibility. That's all stipulated. But, you know, I believe what the prosecutor said was the ER was only eight and nine years old when her innocence was stolen, her childhood destroyed, her purity gone forever, all by the hands of this predator. What does that have to do with defending her credibility? It might not go directly to saying you should believe her because she is young. What does it go to? What relevant matter in this case did that go to? Your Honor, framing the jury's analysis of everything that was about to be heard with respect to her age at the time of the offense, with respect to her vulnerability, can explain why she did not make a contemporaneous outcry, why perhaps her memory of some of these finer details was not as precise. And ultimately, as the Court, Your Honor, Boal-Cobbs noted, you know, these statements enclose in this sort of case, the analysis also goes to how did this prejudice the defendant. And with the nature of these sorts of charges, these comments here, what prejudice did they add, they did not significantly prejudice him such that we don't have confidence in the outcome on the basis of those comments, Your Honor. With respect to the detail that the witness, Dr. Fuhara, described her sexual abuse examination, first, she testified at trial and described her examination in extensive detail. The extent that the prosecutor then rehashed that testimony during closing argument is calling the jury's attention to specific testimony that it heard. And the people are allowed to argue the evidence that was induced at trial. And particularly so here where one of the main points in defendant's argument that this was closely balanced is you have these competing experts. There was a coin flip between who ought to have been believed is their argument. We would disagree with that. And one of the reasons we disagree with that is as the prosecutor argued, she conducted a very extensive examination. And that is something that can be argued to the jury here. And you think that the record bears out that that was the context in which that was being argued? Yes, sir. I mean, this sounds like pretty good Monday morning quarterbacking on your part, but that's not how I read this. It sounds to me like they were, well, I won't impugn any particular motives to the prosecutor, but they're just talking about how degrading and humiliating the whole procedure was for her. They weren't talking about it in that context to say, hey, look what a great job our expert witness did, believe our expert instead of theirs, because he didn't get to examine her. That's not what this was about. They were talking about how horrifying, and I'm sure it was horrifying, to have gone through this very invasive and personal and humiliating experience. All of that's true, but I don't know what that has to do with this case. No, with respect to this — It doesn't have to do with whether the defendant is the person who committed sexual assault against her. Well, Your Honor, with respect to the use of the terms humiliation, those terms go to, again, the credibility of the victim. Here, she was criticized of making this delayed outcry. Defendant argued she made this up for attention, and the people argued that — But by the time she was being checked out by a doctor, she had already made the accusations. Yes, Your Honor, and the people — I can't recall the precise page of the record, but the people argued, you know, she's going through this examination. That's not the sort of attention that a girl is trying to seek out at that age. So it goes to rebutting that accusation that this was somehow fabricated as a ploy for attention and going to not just the fact that this examination was detailed and bears on the credibility of the doctor, but bears on the credibility of E.R. as well. And, again, to return to the — So something along the lines of who would make this up for the pleasure of getting to go through this horrible experience? Essentially, Your Honor. And, again, the defendant argues that we ought to look at the cumulative effect, but as Your Honor noted, this falls far short of lieu, And, importantly, many of these have plausible explanations of why they were said that were proper argument. They go to the credibility. They are responsive to the arguments asserted by defense counsel. And these individual comments that are themselves not error cannot amount to error simply because defense counsel writes many of them down in a brief. These comments were proper, and the cumulative error cannot be greater than the sum of its parts. Here we have four comments that were objected to, sustained, and the jury was properly instructed to disregard them and instructed before the case was submitted to them that argument is argument by the attorneys. It's not evidence. They should disregard anything they don't think is borne out by the evidence. So those were cured. The rest of these were invited response. They were not preserved. And they were proper argument on the facts of the case here. And if there are no further questions, then we would ask this Court for these reasons and all those stated in our briefs to affirm defendant's conviction and sentence. Thank you. Roberts. Quick. Opposing counsel's assertion that the prosecution argued that why would E.R. make this up if she was going through this process. That is a rational theory to explain that. However, that's not what they actually did at trial. You can read the closing arguments and draw your own conclusions of that, but that's not the focus of the arguments. That was not an attempt to do that in the moment to those 12 jurors. They called it cumulative before and after, which is nothing for Dr. Puhar to make a medical opinion on because it had nothing to do with it. And the idea that her age was not an appropriate comment is nothing we've ever asserted. Of course her age is an appropriate comment. It's that calling my client a predator 11 times, talking about her lost innocence, referencing that Dr. DeGraw did not see her on all fours is to develop some of the inflamed jurors. As for the concept of cumulative error, its entire purpose that has been recognized in Illinois courts for many, many years is that the cumulative effect, it is the sum of all the parts together. That is why it is so powerful, so dangerous, and does not bring us a consistent belief that defendants get a fair trial. And that's what took place here. We acknowledge a lot of this wasn't objected to. That's why we're asking you to reserve it for plain error. But it was error to make those statements. There was a lot of those comments, and it really infected the entire trial from the first words the prosecutors talk about very much to the end of what the prosecutors talked about in rebuttal. And very briefly, some beginning of counsel's statement talking about four discreet objections to C.C.'s testimony about Teresa was the focus. That's their characterization. Teresa was talked about for several sentences, but that was a very small percentage of the entire talk about for the defense counsel there. C.C.'s testimony made up approximately three of the 19 pages of closing argument. And so we're talking about percentages to the extent that matters at all, and it really doesn't. Focus does matter. Teresa was not the focus. C.C. was a small but powerful focus of the closing argument. And that matters in assessing harmlessness and how they used predator to kind of infect the entire trial. Thank you, Your Honors. Okay. Thank you very much, counsel. Your briefs were very well done, and your arguments today were excellent. We appreciate that. We will take the matter under advisement and stand adjourned.